UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE A. ORTIZ,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>GARZA, et al.,<br><br>　　　　Defendants. | Case No.  1:15-cv-01370-AWI-JLT (PC)<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT**<br><br>**(Doc. 8)**<br><br>**30 DAY DEADLINE** |

**I. Procedural History**

On October 26, 2015, Plaintiff filed the First Amended Complaint, which is before the Court for screening.  (Doc. 8.)  It appears that Plaintiff should have filed this action in state court. Despite this, while Plaintiff fails to state a cognizable claim under § 1983, he may be able to cure the deficiencies in his pleadings and the Court **GRANTS** leave to file a second amended complaint.

**II. Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C.

1

§ 1915(e)(2)(B)(i)-(iii).

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987).

**III. Summary of the First Amended Complaint**

Plaintiff alleges that on June 10, 2014, he was transported via van to the Central Treatment Center from the California Substance Abuse Treatment Facility where he was housed. He alleges that C/O Garza was the driver of the transport van. On the return trip, while Plaintiff was in waist chains and sitting unbelted in the rear cage (no seatbelts were available for his use) C/O Garza drove at a high rate of speed and lost control which resulted in the van colliding with a "cement A-curve ramp." Dr. Chang examined and treated Plaintiff's resulting injuries.

**IV. Pleading Requirements**

    **A. Federal Rule of Civil Procedure 8(a)**

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is
2  plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555.  Factual
3  allegations are accepted as true, but legal conclusions are not.  *Iqbal.* at 678; *see also Moss v. U.S.*
4  *Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557.

5  While "plaintiffs [now] face a higher burden of pleadings facts . . . ," *Al-Kidd v. Ashcroft*,
6  580 F.3d 949, 977 (9th Cir. 2009), the pleadings of pro se prisoners are still construed liberally
7  and are afforded the benefit of any doubt.  *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir.
8  2013); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  However, "the liberal pleading
9  standard . . . applies only to a plaintiff's factual allegations," *Neitze v. Williams*, 490 U.S. 319, 330
10  n.9 (1989), "a liberal interpretation of a civil rights complaint may not supply essential elements
11  of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251,
12  1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982), and courts
13  are not required to indulge unwarranted inferences, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677,
14  681 (9th Cir. 2009) (internal quotation marks and citation omitted).  The "sheer possibility that a
15  defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a
16  defendant's liability" fall short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678, 129
17  S. Ct. at 1949; *Moss*, 572 F.3d at 969.  Plaintiff must identify specific facts supporting the
18  existence of substantively plausible claims for relief, *Johnson v. City of Shelby*, __ U.S. __, __,
19  135 S.Ct. 346, 347 (2014) (per curiam) (citation omitted).

20  **V. Analysis**
21      **A. Plaintiff's Claims**
22          **1. Eighth Amendment**
23              **a. Safety**
24  "The treatment a prisoner receives in prison and the conditions under which he is confined
25  are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832,
26  114 S.Ct. 1970 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)).  Prison officials
27  have a duty "to take reasonable measures to guarantee the safety of inmates, which has been
28  interpreted to include a duty to protect prisoners." *Labatad v. Corrections Corp. of America*, 714

F.3d 1155, 1160 (citing *Farmer*, 511 U.S. at 832-33; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)).  To establish a violation of this duty, the prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." *Labatad*, at 1160 (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).  This involves both objective and subjective components.

Objectively, the alleged deprivation must be "sufficiently serious" and where a failure to prevent harm is alleged, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834, quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  Subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).  A prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw the inference." *Farmer*, 511 U.S. at 837. Liability may follow only if a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847.

As noted above, Plaintiff claims he was injured in a car accident that was caused by the negligent driving of C/O Garza who was the driver of the transport van.  On impact, Plaintiff was flung about violently and thrown forcefully into the interior security cage, face first, which caused Plaintiff's head to snap back and injured his right shoulder and head.  Plaintiff alleges that the van was inoperable after it collided with a "cement A-curve ramp" which implies that the impact was not insignificant.  However, none of Plaintiff's allegations show that C/O Garza knew of and intentionally disregarded the risk of harm to Plaintiff caused by her driving.  At most, such allegations rise to the level of general negligence under California law (see applicable standard below) -- which is the claim that Plaintiff delineates against C/O Garza.

### b.  Serious Medical Needs

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "A medical need is serious if failure to treat it will result in ' "significant injury or the unnecessary and wanton infliction of pain." ' " *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (2014) (quoting *Jett v. Penner*,

439 F.3d 1091, 1096 (9th Cir.2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc))  To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Second, the plaintiff must show the defendants' response to the need was deliberately indifferent."  *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotation marks omitted)).

The existence of a condition or injury that a reasonable doctor would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and the existence of chronic or substantial pain are indications of a serious medical need.  *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)) (quotation marks omitted); *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994).

Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley*, 475 U.S. at 319).  "Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"  *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'"  *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

In medical cases, this requires showing:  (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.  *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096).  More generally, deliberate indifference "may

1  appear when prison officials deny, delay or intentionally interfere with medical treatment, or it
2  may be shown by the way in which prison physicians provide medical care." *Id.* (internal
3  quotation marks omitted).  Under *Jett*, "[a] prisoner need not show his harm was substantial." *Id.*;
4  *see also McGuckin*, 974 F.2d at 1060 ("[A] finding that the defendant's activities resulted in
5  'substantial' harm to the prisoner is not necessary."). Further, "the indifference to his medical
6  needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not
7  support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.1980)
8  (citing *Estelle*, 429 U.S. at 105-06). *See also Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th
9  Cir.2004).

10       Plaintiff alleges that after the collision, he was transported back to the Central Treatment
11 Center where he saw Dr. Chang.  Plaintiff claims he reported to Dr. Chang that his head was
12 snapped back violently upon impact and that he was "thrown forcefully into the interior security
13 cage, face first, injuring Plaintiff's right shoulder and head on the return impact. . . ." (Doc. 8, p.
14 5.) Dr. Chang asked Plaintiff why he did not protect himself and Plaintiff explained that he was
15 in physical restraints and that there were no seatbelts. (*Id.*, at p. 6.) Dr. Chang thereafter advised
16 Plaintiff that he was fine and could be returned to his housing unit. (*Id.*) Ever since that date,
17 Plaintiff has complained to medical staff repeatedly about pain and injury that he attributes to the
18 June collision, but medical staff rebuff any such connection. (*Id.*)  In the end of 2014 and the
19 beginning of 2015, Plaintiff submitted numerous medical forms regarding experiencing sharp
20 pain in the scrotum area. (*Id.*) Upon examination (by an unnamed medical staff member)
21 Plaintiff was referred to Dr. Chang. (*Id.*) As a direct result of Dr. Chang's diagnosis, Plaintiff
22 was transported to the emergency room of Mercy Hospital where he was seen by a physician who
23 examined him and made an appointment for him to see a specialist, Dr. Michael Oefelein, on
24 August 10, 2015. (*Id.*) Dr. Oefelein performed a surgical procedure which removed the inner
25 sack of his scrotum and advised Plaintiff that his injury was caused by blunt force trauma. (*Id.*)
26 Plaintiff alleges that the only blunt force trauma that he received prior to that injury was the
27 collision. (*Id.*) Plaintiff thereafter alleges that despite his repeated requests for more, the only
28 medication that he has had from the date of the collision to present is 400 mg of ibuprofen. (*Id.*)

6

None of these allegations state a cognizable claim against Dr. Chang. On the day of the collision, Dr. Chang saw him and told him he was fine and could return to his housing unit. Plaintiff did not make any allegations that he sustained an injury to his head, neck, or right shoulder that needed attention beyond that which Dr. Chang rendered. At most these allegations amount to medical negligence which is not actionable under § 1983. While Plaintiff apparently connects the injury to his scrotum to the collision and blames Dr. Chang for needing surgery, Plaintiff does not state any allegations that he alerted Dr. Chang of this claimed injury after the collision a full year before the surgery. Further, once Dr. Chang was made aware of Plaintiff's complaint in this regard, he immediately sent Plaintiff to the Mercy Hospital emergency room. Finally, while Plaintiff states that he only received 400 mg of ibuprofen despite needing and requesting more for his pain, he does not show that he ever raised this issue with Dr. Chang or demonstrates why he believes that a different pain medication was warranted. These allegations fail to state a cognizable claim against Dr. Chang for deliberate indifference to Plaintiff's serious medical needs.

## 2. Supervisory Liability

Plaintiff may have named Dr. Chang thinking that he may hold a supervisory position over medical staff at SATF. It is not clear how Dr. Chang, at the Central Treatment Center, could supervise medical personnel at SATF. However, supervisory personnel are generally not liable under section 1983 for the actions or inactions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege facts that support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal

citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 677. "In a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." *Id.*

The Supreme Court has rejected liability on the part of supervisors for mere "knowledge and acquiescence" in subordinates' wrongful discriminatory acts. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("[R]espondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument.") However, "discrete wrongs – for instance, beatings – by lower level Government actors . . . if true and if condoned by [supervisors] could be the basis for some inference of wrongful intent on [the supervisor's] part." *Iqbal*, 556 U.S. at 683. Further, the Ninth Circuit recently held that where the applicable constitutional standard is deliberate indifference, a plaintiff may state a claim for supervisory liability based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by others. *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). It is under this rubric that the traditional and still valid elements of supervisor liability within the Ninth Circuit are properly analyzed.

It is worth restating that "'bare assertions . . . amount[ing] to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim,' for the purposes of ruling on a motion to dismiss [and thus also for screening purposes], are not entitled to an assumption of truth." *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 556 U.S. at 1951 (quoting *Twombly*, 550 U.S. at 555)). "Such allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Id.* Thus, any inference that Dr. Chang is somehow liable because subordinates violated Plaintiff's rights, is not cognizable.

### 3. State Law Claims

Plaintiff's claims against C/O Garza and Dr. Chang most closely fit the elements for negligence under California law.

### a. Negligence

#### i. General

Plaintiff's claims against Officer Garza regarding how she drove the vehicle are most properly pursued via a general negligence claim under California law.

"An action in negligence requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff. [Citations.]" *Regents of the Univ. of California v. Superior Court of Los Angeles Cty.*, 240 Cal. App. 4th 1296, 1310, 193 Cal. Rptr. 3d 447, 458 (2015), *reh'g denied* (Oct. 26, 2015) quoting *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673, 25 Cal.Rptr.2d 137, 863 P.2d 207 (*Ann M.*) [disapproved on another ground in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527, fn. 5, 113 Cal.Rptr.3d 327, 235 P.3d 988].)

"In order to establish liability on a negligence theory, a plaintiff must prove duty, breach, causation and damages. The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion. Whether this essential prerequisite to a negligence cause of action has been satisfied in a particular case is a question of law to be resolved by the court. To say that someone owes another a duty of care is a shorthand statement of a conclusion, rather than an aid to analysis in itself. [D]uty is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection. [L]egal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done." *Los Angeles Memorial Coliseum Commission v. Insomaniac, Inc.* 233 Cal.App.4th 803, 908 (2015) (citations and quotations omitted).

#### ii. Medical Malpractice

Plaintiff's claims against Dr. Chang are most properly brought as medical negligence (malpractice) under California's laws.

To establish medical negligence (malpractice), a plaintiff must state (and subsequently

prove) all of the following: (1) that the defendant was negligent; (2) that the plaintiff was harmed; and (3) that the defendant's negligence was a substantial factor in causing the plaintiff's harm. *Ladd v. County of San Mateo*, 12 Cal.4th 913, 917 (1996); *Ann M. v. Pacific Plaza Shopping Center*, 6 Cal.4th 666, 673 (1993); Restatement Second of Torts, section 328A; and Judicial Council Of California Civil Jury Instruction 400, Summer 2008 Supplement Instruction.

Medical professionals are negligent if they fail to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful medical professional would use in the same or similar circumstances. This level of skill, knowledge, and care is sometimes referred to as "the standard of care" and can usually only be opined by other medical professionals. *Landeros v. Flood*, 17 Cal.3d 399, 408 (1976); *see also Brown v. Colm*, 11 Cal.3d 639, 642–643 (1974); *Mann v. Cracchiolo*, (1985) 38 Cal.3d 18, 36; and Judicial Council of California Civil Jury Instruction 500, Summer 2008 Supplement Instruction.

### b. California Tort Claims Act

Under the California Tort Claims Act ("CTCA"), set forth in California Government Code sections 810 et seq., a plaintiff may not bring a suit for monetary damages against a public employee or entity unless the plaintiff first presented the claim to the California Victim Compensation and Government Claims Board, and the Board acted on the claim, or the time for doing so expired. "The Tort Claims Act requires that any civil complaint for money or damages first be presented to and rejected by the pertinent public entity." *Munoz v. California*, 33 Cal.App.4th 1767, 1776 (1995). The purpose of this requirement is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *City of San Jose v. Superior Court*, 12 Cal.3d 447, 455 (1974) (citations omitted). Compliance with this "claim presentation requirement" constitutes an element of a cause of action for damages against a public entity or official. *State v. Superior Court (Bodde)*, 32 Cal.4th 1234, 1244 (2004). Thus, in the state courts, "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action." *Id*. at 1239 (fn.omitted).

Plaintiff fails to state any allegations to show compliance with the CTCA to be allowed to proceed on any claims under California law in this action.

### b. Supplemental Jurisdiction

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). As discussed above, Plaintiff fails to state any cognizable claims under federal law upon which to proceed. Thus, Plaintiff's claims under state law should be dismissed as well.

### 4. State and Federal Transportation Laws

Plaintiff generally states in his third claim for relief that C/O Garza violated "State and Federal Vehicle Transportation Laws." However, any such vague claims cannot be analyzed and are thus not cognizable since Plaintiff does not specify which laws he feels C/O Garza violated. Plaintiff may not pursue a defendant for claims under non-specified statutes and/or laws.

## VI. CONCLUSION

For the reasons set forth above, Plaintiff's First Amended Complaint is dismissed with leave to file a second amended complaint within thirty days. If Plaintiff needs an extension of time to comply with this order, Plaintiff shall file a motion seeking an extension of time no later than thirty days from the date of service of this order.

Plaintiff must demonstrate in any second amended complaint how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v.*

*Cassidy*, 625 F.2d 227 (9th Cir. 1980). The second amended complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's second amended complaint should be brief. Fed. R. Civ. P. 8(a). Such a short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. 127, 555 (2007) (citations omitted).

Plaintiff is further advised that an amended complaint supercedes the original, *Lacey v. Maricopa County*, Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1 n.1 (9th Cir. Aug. 29, 2012) (en banc), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

The Court provides Plaintiff with **ONE FINAL** opportunity to amend to cure the deficiencies identified by the Court in this order. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his second amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, the Court **ORDERS**:

1. Plaintiff's First Amended Complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. **Within 30 days** from the date of service of this order, Plaintiff must file a second amended complaint curing the deficiencies identified by the Court in this order; and,

///

///

4. If Plaintiff fails to comply with this order, the Court will dismiss this action due to his failure to obey a court order and for his failure to state a claim.

IT IS SO ORDERED.

Dated: **November 17, 2015**                    **/s/ Jennifer L. Thurston**
                                                                UNITED STATES MAGISTRATE JUDGE